UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LEE HOPE, | ) No. ED CV 10-93 PJW |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration, | ) |
| Defendant. | ) |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits. He claims that the Administrative Law Judge ("ALJ") erred when he: (1) determined that Plaintiff could perform medium work; and (2) found that Plaintiff was not credible. (Joint Stip. at 3-7, 14-16.) Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence, it is affirmed.

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff applied for SSI on June 18, 2007, alleging that he had been unable to work since February 2, 2006, because of a breathing impairment. (Administrative Record ("AR") 76, 102.) The Agency denied his application initially and on reconsideration. (AR 35-48.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 49, 53-54.) In May 2009, he appeared with counsel and testified at the hearing. (AR 17-34.) On September 15, 2009, the ALJ issued a decision denying benefits. (AR 7-16.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-5.) He then commenced the instant action.

III.

ANALYSIS

A. The ALJ's Residual Functional Capacity Determination

1. Plaintiff's Grip Strength

Plaintiff contends that the ALJ's determination that he could perform medium-level work--which requires that he occasionally lift and carry 50 pounds--was inconsistent with the examining doctor's finding that Plaintiff's grip strength was 40 pounds in his right hand and 30 pounds in his left hand. (Joint Stip. at 4-5.) Plaintiff argues, it seems, that, to be able to lift 50 pounds, a person has to have grip strength equal to or greater than 50 pounds. (Joint Stip. at 4.) For the following reasons, the Court finds that Plaintiff is simply mistaken.

Grip strength is not synonymous with lifting ability. *See Bauslaugh v. Astrue*, 2010 WL 1875800, at *5 (C.D. Cal. May 11, 2010) ("[U]nder the Regulations, the ability to grip and grasp is not

related to the ability to lift and carry."). Grip strength measures the force grip of a hand and "represents the power of squeezing between the thumb and fingers." *Chambers v. Shalala*, 1995 WL 228965, at *2 n.7 (N.D. Ill. Apr. 14, 1995). Lifting involves picking up a load with the legs, arms, and torso. Plaintiff's attempt to equate the two is rejected, as is his argument that the ALJ erred when he concluded that Plaintiff could lift 50 pounds despite the fact that his grip strength was less than 50 pounds.

### 2. Dr. To's Failure to Take X-Rays

Plaintiff argues that examining doctor Bryan To's opinion was defective because he failed to order x-rays of Plaintiff's joints, despite Plaintiff's complaints of joint pain. (Joint Stip. at 5.) The Court finds this claim to be without merit.

Dr. To first examined Plaintiff in August 2007. (AR 175-79.) He found, among other things, that Plaintiff's gait was normal and that he had a full range of motion in his extremities. (AR 176, 177.) Dr. To concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours in an eight-hour workday; and frequently climb ladders, bend, kneel, stoop, crawl, and crouch. (AR 178.) He recommended that Plaintiff be restricted from exposure to extreme temperatures, moisture, fumes, and dust. (AR 179.)

In October 2007, Dr. To examined Plaintiff again. (AR 181-89.) He noted Plaintiff's complaints of joint pain, swelling, and stiffness, but found that his gait was normal, as were muscle tone and mass, and that there was no evidence of deformity, swelling, or tenderness in any joint. (AR 181, 182, 184.) Although he noted that Plaintiff complained of "some vague range of motion pain," Dr. To

found that the range of motion was normal. (AR 183, 184.) He also found that Plaintiff's motor function and motor strength were normal. (AR 184.) Based on these findings, he came to the same conclusions regarding Plaintiff's functional abilities as he had in August 2007. (AR 184-85.)

Without citing any authority--legal, medical, or otherwise--Plaintiff argues that Dr. To could not assess Plaintiff's alleged joint pain without taking x-rays. (Joint Stip. at 5.) This argument is not remotely persuasive. The Court is not aware of any evidence--within or without this record--that suggests that doctors cannot assess joint pain without an x-ray and, therefore, are mandated to obtain x-rays in formulating their opinions. Thus, there is no basis whatsoever for this Court to conclude that x-rays were required in this case. As such, this claim is rejected.

### 3. Additional Limitations Overlooked By The ALJ

Plaintiff complains that the ALJ failed to consider all of his limitations in determining residual functional capacity. (Joint Stip. at 3-7.) He points out, for example, that he had been diagnosed with chronic obstructive pulmonary disease ("COPD"), suffered from chest pain, vomited blood, and, though 5'-7" tall, weighed only 130 to 140 pounds. (Joint Stip. at 4.) For the following reasons, the Court finds this argument without merit.

The ALJ concluded that Plaintiff could perform medium work if the air was clean and the temperature not too extreme. (AR 12.) This conclusion was based on the opinions of Dr. To, the examining physician, and Dr. Yee, the reviewing physician. (AR 12-14.) The ALJ was entitled to rely on these doctors in formulating his residual functional capacity finding and nothing in those records contradicts

the ALJ's finding. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion based on independent examination constituted substantial evidence to support ALJ's residual functional capacity finding). That is especially true where, as here, Dr. To's opinion is uncontradicted.

It is not clear to the Court how the fact that Plaintiff had COPD, had experienced chest pains, had vomited blood, and weighed 130-140 pounds precluded him from working, even if all of these allegations were to be believed. Regarding Plaintiff's COPD, Dr. To was aware of Plaintiff's COPD when he examined him. (AR 178, 184.) Dr. To found, however, that Plaintiff's lungs were clear. (AR 178, 184.) Dr. To performed a pulmonary function test to test Plaintiff's respiratory system and found it to be normal. (AR 186.) Ultimately, Dr. To concluded that Plaintiff's respiratory problems required a slightly restrictive working environment but did not preclude work. (AR 184-85.)

Thus, it is not as if Dr. To, and consequently, the ALJ, ignored Plaintiff's alleged COPD. Aware of Plaintiff's COPD, the examining doctor tested Plaintiff and concluded that he could still work in the right environment and the ALJ properly relied on this opinion in reaching the same conclusion.

A similar analysis applies to Plaintiff's complaints about chest pains and vomiting blood. The record establishes that they were isolated incidents and Plaintiff was not hospitalized for them. Rather, he was released from the emergency room the same day. (AR 134, 154.) As to his chest pains, Plaintiff's treating doctor noted on the discharge instructions: "Based on your exam today, the exact cause of your chest pain is not certain. Your condition does not seem

serious at this time, and your pain does not appear to be coming from your heart." (AR 152.) The records from his emergency room visit regarding the time he vomited blood are even less compelling. They are only three pages long and do not explain what if anything the doctors believed had happened to Plaintiff. (AR 154-56.) Whatever they found, they did not think that Plaintiff's condition required additional treatment. Plaintiff has not suggested how these isolated incidents would prevent him from working.

Finally, Plaintiff's claim that the ALJ erred because he did not take into account the fact that Plaintiff was 5'-7" tall and weighed in the 130-140 pound range is specious. Nothing about Plaintiff's weight, on its face, suggests that it precludes employment. Nor has Plaintiff explained how it does. Presumably, he is arguing that he is too skinny to work. Assuming that that is what he is claiming, this argument is rejected out of hand.

B.  The Vocational Expert's Testimony

The ALJ determined that Plaintiff's limitations prevented him from performing his prior work as a painter and called a vocational expert to testify about whether Plaintiff could perform other work. (AR 31-34.) She determined that Plaintiff was capable of working as a kitchen helper, machine feeder, and hand packager. (AR 15.) Plaintiff contends that the ALJ erred when he failed to include all of Plaintiff's limitations, i.e., joint pain, COPD, and learning disability, in the hypothetical question to the vocational expert. (Joint Stip. at 6-7.) Again, the Court disagrees.

An ALJ may limit a hypothetical question to only those restrictions that are credible and supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir.

2005). Here, the ALJ's hypothetical question properly reflected Dr. To's and Dr. Yee's conclusions about Plaintiff's conditions, which the ALJ incorporated into his residual functional capacity finding. In short, the ALJ determined that Plaintiff could perform medium work in an environment free of dust, fumes, and temperature extremes. (AR 178, 184, 190-193.) The ALJ did not err in failing to include in the hypothetical question other limitations alleged by Plaintiff that were either not supported by the record or did not impact his ability to work.

Plaintiff argues that the combination of his limitations, in particular the environmental limitations, would significantly reduce the number of jobs identified by the vocational expert. (Joint Stip. at 6-7.) The record does not support this claim.

The ALJ asked the vocational expert whether a person who could not read or write and was limited to medium work in an environment without dust, fumes, and extreme temperatures could perform any work. (AR 31.) The expert testified that, consistent with the Dictionary of Occupational Titles ("DOT"), such a person could work as a kitchen helper, hand packager, or machine feeder. (AR 31-32.) As the vocational expert made clear, in reaching this conclusion, she had, for example, reduced the number of hand packager jobs by 50% to account for Plaintiff's limitations, including his inability to read and write. (AR 33.) Thus, a fair reading of the record establishes that the vocational expert took into account Plaintiff's limitations as set forth in the hypothetical. Plaintiff has not offered any evidence to the contrary. For that reason, the Court finds that the ALJ did not err in relying on her. *See Johnson v. Shalala*, 60 F.3d

1428, 1435 (9th Cir. 1995) (holding ALJ is allowed to rely on vocational expert's testimony even if it contradicts DOT).[1]

### C. The ALJ's Credibility Determination

In his final claim of error, Plaintiff argues that the ALJ failed to identify which portions of Plaintiff's testimony he found incredible and failed to provide clear and convincing reasons for rejecting Plaintiff's complaints. (Joint Stip. at 14-16.) For the following reasons, the Court disagrees.

ALJ's are tasked with judging the credibility of witnesses. Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques. *Id.* at 1284.

At the hearing, Plaintiff alleged that he suffered from chest pain, joint pain, and respiratory problems, which made it impossible for him to stand for more than 20 to 30 minutes at a time or walk for more than 15 to 20 minutes. (AR 25.) The ALJ found that this testimony was not fully credible. (AR 13.) He noted that there was

---

[1] Even assuming that the vocational expert had failed to reduce the number of the other jobs to account for Plaintiff's limitations, with regard to hand packager jobs, after reducing them by 50% to account for Plaintiff's limitations, there still remained 50,000 jobs nationally and 3,500 locally. (AR 14.) Clearly, this was more than enough to support the ALJ's finding that there were a significant number of jobs in the economy. *See*, e.g., *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (holding 64,000 jobs nationally and 2,300 jobs locally is enough).

no medical evidence to validate Plaintiff's orthopedic complaints and that the record showed that Plaintiff's lungs were relatively normal, with good oxygen flow. (AR 13.) These were legitimate reasons to discount Plaintiff's testimony, *see Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding ALJ's credibility determination in part because evaluations revealed little evidence of disabling abnormality), and are supported by the record. Upon examination, Dr. To found no evidence of respiratory failure and no evidence of joint deformity or tenderness. (AR 177, 183.) A pulmonary function test revealed that Plaintiff's pulmonary function was normal. (AR 186.) Furthermore, when Plaintiff's lung volume was measured by nitrogen washout, the results showed total lung capacity, vital capacity, and residual volume to be within normal limits. (AR 221.)

Additionally, the ALJ found that Plaintiff's treating physicians responded to his condition with only limited and conservative treatment. (AR 13.) This, too, was a legitimate reason for discounting a claimant's credibility, *see, e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("[T]he ALJ properly considered [the treating physician's] failure to prescribe . . . any serious medical treatment for this supposedly excruciating pain"), and is supported by the record. For these reasons, the Court concludes that the ALJ did not err in finding that Plaintiff was not credible.

IV.

CONCLUSION

For the reasons set forth above, the Court finds that the Agency's findings are supported by substantial evidence and are free

from material legal error.  The decision of the Agency is, therefore, affirmed.

IT IS SO ORDERED.

Dated: <u>May 30, 2011</u>

/s/ Patrick J. Walsh
_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\HOPE, T 93\MemoOpinion.wpd